All right, our next case is Dr. Lana Foster v. Shannon King, and we'll give the attorneys a moment to get settled before we begin. Do we have counsel here for Dr. Foster? You can sit at whichever table you want to. All righty. Do we have counsel here for ... Okay, well let me ask, do we have counsel here for ... Are you Mr. Brian? Is Mr. Brian here? Mr. Brian's here. All right. Come on down. You're the next contestant. Just for the benefit of the audience, the order that we have is this case, then next is Drummond v. Southern Company Services, and then next is Smothers v. Walker County. Yeah, I'm not going to say we're third, but I mean I'm happy to go now, Your Honor. Thank you very much. We appreciate it. We're sorry if there was any confusion in the chronology of how we would hear the cases this morning. Right, right. There was another case that was listed for today, but in the announcement of the case order, it was indicated that we issued that one on the papers, so maybe that's where the confusion came from. Got it. Yes, Your Honor. Well, I'm glad that we got that cleared up. All right. Whenever you're ready, we'll hear from you, Mr. Brian. Good morning, and may it please the Court, Bennett Brian on behalf of the Eccles County school officials and this Qualified Immunity Appeal. We're here today because the district court improperly denied qualified immunity to my clients as to plaintiff's claim under Section 1981. The district court held that Section 1981's application to the facts of this case was so obvious that guiding principles from case law were unnecessary to put my clients on notice that Section 1981 applied to their conduct, even though the plaintiff never argued a violation of clearly established law in the district court. This court should reverse that decision for three reasons. First, the district court never should have reached the issue in the first place. The Eleventh Circuit has a well-settled burden-shifting framework. Here's the thing, though. The district court did reach the issue, so I don't know how we could reverse it and say, district court, you were supposed to make the plaintiff say something, and the plaintiff didn't say it. If we did that, then I think the district court could just say, oh, okay, hey, plaintiff, do you want to say the things that I said in my opinion? And the plaintiff would say yes, and then we'd be right back up here. So I guess I don't understand how, like, it is the plaintiff's obligation to respond, but the district court did it. So I don't see how we can reverse on that ground. Well, Your Honor, I think that, you know, we've got some case law, including the Christmas case that we cited in our brief. Right. In the Christmas case, the district court said the plaintiff didn't respond, therefore, I grant qualified immunity, and we affirmed. And I think had the district court said that here, we would affirm. But instead, the district court said, hey, I don't even need the plaintiff to respond because it's obvious to me that this is clearly established. So... I mean, you're right, Your Honor. The Christmas is distinguishable on those grounds. I think there's that other, the Philz versus City of Aventura case as well that really just says, hey, look, this is not an illusory burden-shifting framework. It has some teeth. And if a defendant fails to satisfy its burden to show that he or she was acting within their discretionary authority, then they're not entitled to qualified immunity. And district courts should not reach issues that were not raised, and especially when we have... It's not just an issue that wasn't raised. It's a really heavy burden that a plaintiff carries. And so, forgiving a plaintiff for not even attempting to carry a heavy burden, I think, sort of... So, let's say someone files a lawsuit and it's absolutely clear, like on the face of the lawsuit, they're like, this police officer, you know, it's an estate. This police officer shot me in the back, shot the decedent in the back while he was running away, and he only committed a misdemeanor. And that actually is the facts of a Supreme Court case if the Supreme Court said you can't do that. And then the defendant raises qualified immunity, and the plaintiff is represented by a bad lawyer who doesn't respond very well to that. But the district court says, look, I mean, it's exactly like a Supreme Court case. Like, I'm denying the motion to dismiss based on qualified immunity. You would say that then that would appeal to us, and then we would reverse and say that you have to grant qualified immunity because the plaintiff didn't respond correctly to the motion to dismiss? Or that the plaintiff did not satisfy their heavy burden to show a violation of clearly established law. Well, why doesn't the complaint itself do that, I guess is my point. I mean, the plaintiff makes the complaint. Well, I think, again, the burden-shifting framework that you all have set forth requires the plaintiff to point to clearly established law. But either way, Your Honor, that is only one of the errors that the district court made in this case. And I'd like to move on to the second error. Can I ask you one other question before you move on? Sure. One of the arguments you've been making, as I understand it, is that your clients didn't have the authority to comply. Is that a fair interpretation? Well, as non-parties to a contract, they could not possibly have breached the contract. Yes, Your Honor. So it doesn't seem to me that you argued that your clients had the discretionary authority then to be able to invoke the qualified immunity defense. Now, the court went ahead and found it anyway, so I think it's fine. But I guess my argument, or not my argument, but my question for you is, it seems like you can't both benefit from having the discretionary authority so that you can invoke qualified immunity, and then saying on the other side of the coin that you didn't have the discretionary authority. And I just wonder if you could address that for me, because I might be missing something there. That's a good question, Your Honor. I think there's a couple of responses to that. Again, first, the district court did decide that we were acting, or that my clients were acting within their discretionary authority, and therefore that issue is not here on appeal. Likewise, in- The same way the clearly established one isn't. Well, again, the district court said that we did carry our burden to do that, but fair enough, Your Honor. And that's not also an issue that's been briefed on appeal, because the plaintiffs did not raise that issue in their response brief either. However, okay, so I guess to a certain extent, we have to take a plaintiff's allegations in their complaint at face value, right? And they say in their complaint that, you know, my clients have, you know, some sort of role in the compliance process with the EEOC settlement agreement in this case, right? And so that's enough to carry that burden. And that's enough to show that we, you know, that my clients were acting within the scope of their discretionary authority, or in this case, not acting, I suppose. Do they not have that, though? Because is your argument, would your argument lead to the conclusion that they would be completely within their rights to do everything they could to obstruct performance of the contract just because they were not parties when it was originally reached? I'm not quite sure that's right. Well, I think that, you know, when we're talking about the qualified immunity analysis, we have to look at the law, we have to compare existing law to the specific facts of the case. We have to particularize our inquiry to the specific facts of the case. And in our case here, we have a wealth of case law saying that a individual who is not party to any contract with the plaintiff cannot be held liable for a breach. It's impossible for them to breach it. This is a 1981 case, though. This isn't a breach of contract case. So the argument is that, as I understand it, is that your individual clients worked to deny her the benefits of the contract that she had with the board and that that violated 1981 because they did that on the basis of her race, right? Yes, that's their theory. And so you say that there are courts that have suggested that you have to be a contracting party? Yes, Your Honor. And I'd like to go through those. What court has ever suggested that? Okay, so I'd start with the Domino's Pizza versus McDonald's case, the Supreme Court case. This is the first sentence of that case. We decide whether a plaintiff who lacks any rights under an existing contract... Oh, no, no. Those are... The plaintiff has to have the right under the contract. Yes, absolutely. Yeah, that is... Okay, I'll admit that that's a holding of the case. The first sentence says, who lacks any rights under an existing contract with the defendant, right? And so a reasonable person that's reading that opinion could take the Supreme Court for its word that it requires an existing contract with the defendant. My next case would be Wright versus Eugene, 6-8 F. 4th, 6-12. This is a case out of the D.C. Circuit, and it's actually quite factually similar here. In that case, the plaintiff had been terminated from her employment. The plaintiff and the company had a severance agreement. Part of that severance agreement was that the company would not disparage her to any future employees. She claims that the CEO breached, or the CEO did actually sort of defame her, disparaged her to another employer, so she filed a 1981 action against both the company and the CEO. The D.C. Circuit said, look, you can't have a breach of contract against the CEO because the CEO wasn't part of the contract. And then it went on to the 1981 claim and said, you also have no claim against the CEO under 1981 because you had no contract with the CEO. And it cited the Domino's Pizza, the Supreme Court's opinion in Domino's for that principle. What do you do about our decision in Farico, the old Fifth Circuit that seems exactly the same as this, where the lawsuit was against, I guess it was the supervisor at the hospital and not the hospital itself? That's a good question, Your Honor. I think there's a couple questions, or there's a couple answers to that. First, this court said as recently as 2021 that the issue of whether an individual can be liable under 1981 is open and still. That was an unpublished opinion and that was a footnote, you know? Well, yes, Your Honor, but it's still... So we've got a published opinion from the Fifth Circuit that finds an individual liable under 1981, and then we have an unpublished opinion in a footnote saying, we're not really sure if an individual can be liable under 1981. Fair enough, Your Honor. I'm not sure that you read that footnote, didn't do research back to the old Fifth Circuit. Well, I mean, I think that if three reasonable judges could assume that Faraca did not actually decide that issue... I'm not sure that they were aware that Farica existed, I guess you might call it. They cited Farica in the opinion. It's cited in that footnote saying, you know, we've never decided, but we've suggested. So it basically, they said that Faraca suggested that that would be the case. But number two... Well, let me ask it to you a different way. Sure. Under Georgia law, section 20-2-109, isn't the superintendent, the board's alter ego responsible for enforcing its policies? Well, I don't know if alter ego is the right word for that. I feel like that may be a term of art that we need to look into. But I know that the superintendent generally, yes, is responsible for enforcing board policies. So why isn't it the case then that the superintendent, at least under that particular statute, is specifically bound? Because in their individual capacity, they were not party to the, neither the former superintendent nor the current superintendent was party to the contract. So that goes back to my earlier question, which is, in your view, if that's the case, then the superintendent, who is legally responsible for enforcing the obligations of the school board, could do quite the opposite and have no consequences. Is that what you're saying? Well, I'm not saying that there would be no consequences. What I'm saying is that under a civil rights lawsuit under 1981, they would be protected from qualified immunity. And I see my time is up. I just have one more question, if Judge Rosen doesn't mind. You focused a lot in your briefs on the fact that qualified immunity shouldn't be granted because it wasn't clear whether individuals could be held liable in this context. I didn't see that argument made before the district court. Can you tell me if I'm missing something? Because if not, I think that you've forfeited that point. Well, I think, Your Honor, again, this goes back to the burden shifting. The plaintiff never argued a violation of clearly established law before, so we didn't respond to that point because the plaintiff never raised it in the first place. And because it is the plaintiff's burden to raise that, we have no, you know, defendants have no burden to point to any law that shows it's not clearly established. Yeah, but to preserve an issue, you would have to file a motion for reconsideration. I mean, certainly after you had the district court's opinion, you knew that that was its  We're pretty clear that you can raise something on a motion for reconsideration in order to preserve it for appeal. Again, Your Honor, I think that we have cited a case out of the Tenth Circuit in our brief saying that any defendant's failure to, you know, point to any law saying that the law is not clearly established does not result in a forfeiture of that argument. And also, again, because we satisfied our burden, and there is no question about whether we satisfied our burden to show, you know, our qualified immunity burden, there is no forfeiture here, excuse me, on our part. What is your, what is, you started, I asked you a question about, I guess it's Faraka, Faraka, I don't know how you pronounce it, and you said you had some more points you wanted to make on that, and I would like to hear those points. Yes, well, in the Supreme Court's opinion in Reichel v. Howard, I think that's how you pronounce it, Reichel, 2012, the U.S. Supreme Court said that whenever any case law comes around subsequent to prior precedent, that sort of injects any uncertainty into the application of that precedent going forward, then that is another reason to provide qualified immunity. In that case, there was a, I believe it was a, I think it, I don't remember what circuit it was out of, but I believe it might have been a Tenth Circuit case, but there was circuit precedent that was, that had clearly established the law at some point. A subsequent Supreme Court case, Hartman v. Moore, sort of injected some uncertainty into the legal principles that that prior circuit precedent relied on, and because a subsequent Supreme Court case injected uncertainty into the viability of that case, or the legal principles applying to it, it could not constitute clearly established law, and therefore qualified immunity was appropriate. And the last, the last bit on that, on the Farraka issue, is that for, you know, this, this court has sort of distinguished two types of 1981 claims, and they sort of split it down the middle, and they say we have four employment discrimination claims, these are the elements, and then we have for non-employment discrimination, and so Farraka is an employment discrimination case, but that's not, that's not this case here, so Farraka would not be able to clearly establish the law in sort of a more traditional breach of contract 1981 case, because it took place specifically in the employment context, and here, this is not an employment dispute, this is a dispute about a settlement agreement from a former employee who's agreed never to even apply for future employment, so traditional employment law principles could not clearly establish the law here. Okay. Thank you, Your Honor. All right. Thank you, Mr. Bryan. You've reserved three minutes, and we'll hear from Mr. Wolf now. May it please the Court, thank you for allowing oral argument in this case. I want to go through the facts of the case, which sort of lay the predicate for the Court's analysis of qualified immunity. Those are important. They are assumed as true, and I want to just lay out a few of those to start off with, then address the issue of waiver in the district court, and the application of law suggested by the defendants, which is erroneous, and then point out the standard of individual liability in this circuit. Not in the Tenth Circuit, not in the D.C. Circuit, not in the Fifth Circuit, this circuit. Dr. Foster and her immediate family have undergone an incredible, painful... You're going to have to get to something. You just... Okay. What's your point? Okay. Well... I mean, she sued the county multiple times. Yes. This was a settlement. Well... I mean, we're familiar with the background. I mean... Okay. Thank you, Your Honor. You've only got 15 minutes. There's been a history. There is some... There are some issues in terms of causation that may affect individual liability regarding a history of abuse in Fourth Amendment cases that might be relevant here. That's why I was going to go through some of the facts, but I'll get to that. I'll go ahead and skip the facts on that front and bring up that issue later. The district court relied on these allegations to get to the bottom of the factual introduction. Part of the allegations are the agency that these individual defendants have. These... And we go meticulously through the complaint to detail that agency, that power, that decision-making authority, the authority to implement, the authority to not implement, the provisions of the agreement that are still alive in this case. So that's an important point. And the defendant may disagree with those facts, but I wanted to make the point briefly that those facts are accepted as true, of course, on this appeal and in evaluation of a qualified immunity standard. I wanted to address first the waiver issue. The waiver issue brought up by the defense does not apply to the district court. And I think you've identified the factual problem, the factual difficulty of that. This U.S. v. Campbell Access Now cases apply to the consideration on first opportunity in the appellate court, not in the district court. The district court has a discretion to confront an obvious violation of law and bring it up himself, whether or not the parties did. Now, we contend that the party, Dr. Foster, did bring up clearly established law. It's not the most robust argument you'll find in a brief or clearly established, but she brought it up on pages 22 and 23 of her brief in the district court, and it's there. Can you remind us what was said there? Yes. She identifies the specific standard for clearly established. She identifies the case law and parenthetical elements. She identifies the specific facts of that case law that's applicable to the case confronted by the district court here. And was it employment law cases? They were largely employment law cases. Yes, they were. It's difficult to find a breach of contract case, and I think I have not found one in the 11th Circuit. And I think part of the reason is because it's so clear. It's a, although she's denied the benefits of the contract, Judge Brasher, it's, it's, we have analyzed it under a breach of contracts or theory. But you breach the contract, well, is it breached? The defendant did bring that up in his, in their briefs. It was not immediately implemented. There's a little more beyond immediately implemented in this contract. If you, if you immediately draft the, the, the recruitment plan or the hiring plan, that's one thing. But there are things in the recruitment plan and the hiring plan. The taking of names, the applications of the applicants, where those applicants live, the interview notes, et cetera. Those things are, we asked for those in Open Records Act, didn't get anything. They breached the contract that she's been denied the full benefits of that contract. And, and, and I think perhaps one reason we don't see it in the appellate reports or the district court reports is because it's obvious that you don't perform, and we've alleged it's intentional. We realize that as the case moves forward, summary judgment could determine other, determine otherwise. The depositions may determine otherwise. The written discovery may determine, but we've alleged it. It's accepted as true on appeal that it was not performed, and it was not performed because of race. It's as simple as that. It's a violation. So I guess there, the argument on the other side would have to be a defendant could say out loud, I am not performing this contract with my end of the bargain with you because I'm hostile to your race. And they have to argue that it's not clear that that's wrong. Is that, is that what your position is? And that that obviously can't be true? I just want to make sure I'm understanding your argument. Are they, the defendants could argue that it's not true? I think that what you are saying is for them to be correct, then that proposition would have to be true. That an individual defendant could say, I'm not performing my end of the contract with you because I don't like your race. Right? Well, if they said that, we would have even more evidence that it was not performed because of race. No, I agree. I know your evidence is different, but I'm just saying that that, that proposition would have to be true, is what you're saying, in order for them to win. You're saying that that proposition is just so obviously untrue. Ultimately, we have to prove it, that's right. And, and just to take the defendant's argument for a moment, we may not be able to prove it. I think we will, given the history of this case, if you read the complaint and, and the brief of Pelley, and I know you have. It's we've got a strong case. It's certainly a plausible inference at this time that race was the reason for non-performance of the agreement. The, but interestingly, here, as has been brought up by the panel, the defendant, well, as we've, the defendant in the briefing, if you'll look at the briefing on the district court level, brings up discretionary authority. Plaintiff responds to the discretionary authority argument and this clearly established argument. Again, it could be more robust, but it's there. Defendant files a reply brief in the district court and mentions nothing about clearly established, the law has been violated. Defendant has some burden to come forward, and we think plaintiff put him on that burden to come forward with clearly established. But the district court did find that, that there was discretionary authority. So we move forward with the, with the qualified immunity analysis. How does the court define, I'm sorry, I didn't get your question. The district court did find that there was discretionary authority, right? Yes, ma'am. Okay. So, so now we move forward, unless, unless it's your position that that was a clearly erroneous factual finding or legally wrong or whatever, then we move forward with the qualified immunity analysis, right? Yes. I would say the discretionary authority is part of the qualified immunity analysis. But once that is established, we go to the clearly, we go to the clearly established, or whether there's a violation of law and whether the violation of law is clearly established. And so we're there. And the plaintiff puts that forward in the district court, silence from the defendant. And now we've got 40 to 60 pages of briefing on clearly established authority from the defense that we've never heard before. And that is where Access Now comes in. That is where U.S. v. Campbell comes in to, for this court to conclude, you didn't raise it on the district court level. It was not resolved by the district judge. And now you're bringing it to us, having never briefed it before on the district court. The defendant has brought these issues in briefing to this court and has hoisted itself on its own petard. It didn't bring those issues up in the district court and now it brings it to us. So forfeiture is going on here, not in the district court. The district court is governed by Campbell versus Kemper Financial. I appreciate if we get to the merits a little bit. So the defendant, the defendants say, look, it's not clearly established that someone can be held liable for tortious interference effectively with a contract under 1981. They say, look, to be held liable under 1981, at the very least, it's an open question whether you need to be a contracting party. And these people weren't contracting parties. So they get qualified immunity because it's an open question whether they could be held  What do you say about that? I say that that's wrong, Your Honor. We do have standards for that, to answer that question in the 11th Circuit. The, and those standards are, first, whether you can hold an individual liable for a violation of federal law was resolved in Harlow versus Fitzgerald back in 19, I think it was 82. But there are many, many cases, the Farraka cases, binding authority on this circuit. Third-party interference with a contract, an individual is held liable. Burstein versus Emmettell that came, came resolved in favor of the defendant, but only because the defendant did not participate in the decision. The defense goes off into the Fifth Circuit in 2019 and 2018. Those are not cases that, but still there, an individual police officer held liable in Johnson versus Houston. Back to the 11th Circuit, Christmas versus Harris-Counter, supervisor personally participates in the decision and is held to that standard. I think that the Christmas decision was not, the crux of that decision, Your Honor, I believe was not the waiver issue. I believe that decision moved forward because the, the, the, the supervisor actually personally participated in the decision-making. That's the case too, but. I'm going to interrupt you, I'm going to interrupt you because you're running out of time. To me, I personally agree with a case from the 10th Circuit, which I don't think has been cited, but the court there said the question of whether the defendants are subject to individual liability under the FMLA, it's a different statute, but is one of statutory construction that has no bearing on the question of whether the defendants exercise their duties in good faith. That it seems to me that not knowing whether you would be liable for a constitutional violation is different than what we usually look at in qualified immunity, which is whether you knew that what you were doing was a constitutional violation. Those seem to me to be entirely separate concepts. I'm not really sure why courts have mixed them. Can you respond to that? Well, the, the good faith defense was a defense before qualified immunity came along. I'm not sure of the year of your, your 10th Circuit case, but that was the same. Again, the concept is the same is what I'm saying. So why do you, I would think that you would agree that those concepts should not be mixed and that your friend on the other side would disagree. Well, if we go to good faith and the defendant's personal belief, whether they're going to be held liable or not, we'll go with that standard. I don't think it's a standard in the court, but we'll go with that standard given the facts of this case. There's no way that that Board of Education could believe they were not violating the law given the history of this case. And that's what I'm saying. The question in qualified immunity is, was it clearly established that this behavior, this conduct was a violation of the law? The question is not, was it clear to defendants that if they violated the law, they would be held accountable? Right? That's correct. Okay. That's correct. Yes, Your Honor. And the question is, this is not a complicated Fourth Circuit decision. I mean, excuse me, a Fourth Amendment decision where you've got interference with, I mean, excuse me, where you've got excessive force being used and all sorts of facts moving around of whether the plaintiff moved left or right, whether the police officer observed him or the gun. It's not a complicated employment law decision where different actions by different actors could have contributed to the eventual termination decision. This is a, was the contract breached? Yes, plausibly, and we will prove it. Was the contract breached? Was it because of race? We've alleged it was because of race and we've alleged it plausibly and in good faith and given the history of this case, it was breached because of case. These are not big hurdles for the court to get to, in my opinion. It was breached. It was breached because of race. End of story. Not a complicated Fourth Amendment case, not a complicated employment law decision, and that is the clear violation of law reached by the district court. There are not many facts to have to wrestle with in this case. And the court did conclude it was clearly obvious that there was a violation of law and that it was clearly established to the defendants and has been, and that's the point of me going through these cases. Okay. Thank you so much, Mr. Wolf. We appreciate your time. Thank you. Mr. Bryan, you've got three minutes. Thank you, Your Honor. Can you quickly address my point, which is it's a different question whether the defendants understood that they would be liable versus whether they understood that their conduct was a violation of the Constitution or a statute? Yeah, I have two answers to that question. First of all, I do think that, yes, it is relevant to the qualified immunity analysis, and I've got a lot of authority to support that position. No, I know, but conceptually, I'd like to hear why, because I know courts have held that and it just doesn't make sense to me. I wonder what I'm missing. Well, I think because the Supreme Court has said that the purpose of qualified immunity doctrine is to provide notice to government officials when their conduct might give rise to liability. So the Supreme Court has included might give rise to liability in sort of the purpose statement of the qualified immunity standard and in the application as well. In the Ziegler v. Abbasi case, the court said it was a 1985-3 case, and the court said, well, in this factual scenario, it's unclear whether Department of Justice officials could be held liable under 1985 for an unlawful conspiracy. And so because their potential liability was not clearly established, they could not have known that their conduct would give rise to liability, which, again, is both the rule and the purpose of qualified immunity. The Ziegler case handles that under 1985-3. The Schieber case from this court in 2023, it was a 1981 case. It just seems, I mean, a little ridiculous to suggest that, assuming the truth of the facts alleged, right? Okay, because that's what we have to do. It just seems a little ridiculous to suggest that the board here and the superintendent here could, with impunity, go ahead and violate the settlement agreement and refuse to hire black people and retaliate against someone because she was black and do all of these things because they did not want black people working in the school district, and that somehow that was okay because they didn't know that they couldn't do that. Doesn't that seem a little... Or even, just to follow up to make the question sharper, even that they knew that they couldn't do that, but it wasn't totally clear that they could be held accountable for that constitutional violation or that statutory violation? Two answers to that question. First, you know, first, we do have to look at, you know, qualified immunity doctrine as discussed by the U.S. Supreme Court, and we have to look at what the Supreme Court has said about 1981. The court said that Section 1981 is not intended to be a sort of general prohibition against racial discrimination. It's not enough to just say that there was some sort of discrimination and that that would be, you know, it would be unjust to not hold them responsible. But here you have a settlement agreement. It's, by the way, not the first settlement agreement. There have been years upon years of history here, the Civil Rights Division settlement agreement, this settlement agreement, a payment of $137,000. I mean, there's... It's hard to conceive of how they couldn't know that what they were doing violated the terms of the contract and that they were doing it. Obviously, the allegation that we must accept for purposes of this appeal is that they were doing it because Dr. Turner, because Dr., I'm sorry, Dr. Foster is black. And that, you're arguing that somehow they're exempt, that they have qualified immunity because, you know, somehow they shouldn't have known that this was something they couldn't do. Well, I do think that, you know, we... Qualified immunity sometimes is going to block otherwise, you know, otherwise substantive claims. We know that that's going to happen. And so what we have to do is we have to apply the rules that the Supreme Court and this court has set forth for determining whether, and to your point, Your Honor, about the liability, you know, being clearly established versus, you know, rights or conduct. I think that it would be entirely fine to rephrase that and say, did the plaintiff have any clearly established right under 1981 to be free from interference with contract by a third party or by someone not party to the contract? So if we want to, if it's the liability word that's giving us heartburn here, we can reframe that in terms of rights, right? And say the plaintiff does not have a clearly established right under 1981 to be free from interference with contract by a third party. And I think my opposing counsel's statement during his argument is very telling here. He said, you know, we were unable to find an 11th Circuit case talking about this. And that's the point of qualified immunity is to protect officials when there is not clear guiding law, you know, clearly establishing the right, clearly establishing their liability or just clearly establishing the legal rules. I think that's your stronger argument, you know, setting aside whether you're right or wrong, but your stronger argument is there isn't law specifically saying that these particular acts are a violation. But to the extent that there's a question about individual liability, and I think there probably is, it seems to me that that would be a question that would be litigated on the merits after a qualified immunity decision rather than as a part of that decision. Well, again, Your Honor, I think that because the purpose of qualified immunity is to provide, is to make sure that folks have noticed before they are subjected to liability. We have the 6th Circuit, we have the 8th Circuit, we have the 5th Circuit, we have the 11th Circuit, we have the Supreme Court all saying that that is an important consideration in the qualified immunity analysis. Whether the law gave them notice that their conduct would give rise to liability. But again, Your Honor, I do feel like it's almost a semantics argument that I'm making here because you can reframe that under sort of the more traditional qualified rights or conduct language as well. I just think that because the Supreme Court and so many other circuits have taken this position, that's the way that we framed it. But I don't think that that's the way that this court would have to frame it in order to rule in favor of my clients and reverse the district court, which is what we respectfully ask you to do. All right. Thank you very much, Mr. Bryan. Thank you. And our next case for today.